**Irwin KLEPPER, Plaintiff–Appellant,**

**v.**

**FIRST AMERICAN BANK,**
**Defendant–Appellee.**

**No. 89–6380.**

United States Court of Appeals,
Sixth Circuit.

Argued July 30, 1990.

Decided Oct. 4, 1990.

Gordon J. Dill, Jr. (argued), Ashland, Ky. (Dill & Scott, Ashland, Ky., on the brief), for plaintiff-appellant.

John A. West (argued), Lexington, Ky. (D. Barry Stilz, and Greenebaum Doll & McDonald, Lexington, Ky., on the brief), for defendant-appellee.

Before MILBURN, GUY and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Irwin Klepper appeals from a summary judgment in favor of appellee First American Bank ("First American") entered October 13, 1989 in the Eastern District of Kentucky, Henry R. Wilhoit, Jr., District Judge, dismissing the complaint.

The court held that Klepper's claim for compensatory damages was barred by a previous recovery in a related arbitration proceeding. Klepper's second claim for punitive damages was rejected as insufficient under Kentucky law. Having disposed of the compensatory and punitive damage claims, the court held that plaintiff's remaining claim of $5,000 for incidental damages and attorney's fees was inadequate to support subject matter jurisdiction.

On appeal, Klepper contends that the court erred in dismissing the claims for compensatory and punitive damages. He further contends that the court did have subject matter jurisdiction to hear the claims.

For the reasons which follow, we affirm that part of the judgment which dismissed the claims for compensatory and punitive damages, but we remand the case with respect to the remaining claim for a determination on the merits.

## I.

We shall summarize only those facts believed necessary to an understanding of the issues raised on appeal.

In 1980, Klepper formed a partnership with David Osborne, his son-in-law. Klepper was a limited partner with a twenty-percent interest, while Osborne was the general partner who owned an eighty-percent interest. The partnership was formed to hold title to certain commercial real estate in Ashland, Kentucky. The partnership acquired property which later was occupied by First American. The relationship between the two partners deteriorated when Osborne and Klepper's daughter were divorced. Subsequently, Osborne entered into negotiations with First American for the sale of the partnership property.

Osborne and First American consummated an agreement in December 1988. Osborne conveyed real estate owned by the partnership to First American for $3.5 million. Concurrently, First American entered into a contract with Debcon, Inc. ("Debcon"), a construction company wholly owned by Osborne. The construction contract provided that Debcon could earn up to $400,000 over a three year period for certain unspecified projects. Under this same contract, Debcon was guaranteed a net profit of $200,000, whether or not work actually was performed for First American.

In August 1988, Osborne commenced an arbitration proceeding against Klepper based on unrelated partnership matters. Upon learning of the construction contract with Debcon, Klepper asserted a counterclaim in that same arbitration. He alleged that Osborne breached his fiduciary duty to the partnership by entering into the construction contract with First American. Klepper believed that the contract price of the second agreement actually was consideration for the sale of the partnership's real estate. The arbitrators awarded Klepper $80,000, which represented his twenty-percent share of the construction contract with Debcon. The arbitrators then deducted from the $80,000 award what Klepper owed Osborne which left a balance for Klepper of $17,315.45. The award later was confirmed by the district court, and in this proceeding, Osborne has acknowledged that he has received full payment of the award. Osborne appealed the confirmation

---

* Honorable William H. Timbers of the United States Court of Appeals for the Second Circuit, sitting by designation.

of the award to this Court. On May 8, 1990, the district court's judgment was affirmed. *Klepper v. Osborne*, 902 F.2d 33 (6th Cir.1990).

On February 28, 1989, Klepper filed the instant complaint against First American. It alleged that First American tortiously interfered with the partnership agreement and further conspired with Osborne to defraud Klepper of his share of the construction contract with Debcon. The complaint sought $80,000 in compensatory damages plus attorney's fees and expenses totaling $5,000, and punitive damages of $500,000 due to the Bank's alleged "intentional, oppressive, fraudulent and malicious" conduct.

First American filed a motion for summary judgment asserting that, since Klepper already had recovered in the arbitration proceeding against Osborne the full amount which was owed to him, he was collaterally estopped from recovering compensatory damages in this action. In addition, First American asserted that Klepper could not recover punitive damages as a matter of law; and accordingly, that claim could not be used to satisfy the jurisdictional amount required for maintaining diversity actions in the federal court. First American accordingly asserted that the remaining claim for attorney's fees and incidental costs must be dismissed because the court lacked subject matter jurisdiction.

In a judgment entered October 13, 1989, the court granted First American's motion for summary judgment and dismissed Klepper's complaint. Since Klepper received one recovery in the arbitration against Osborne, the court held that the compensatory damage claim should be dismissed. The punitive damage claim was dismissed because Klepper failed to offer "clear and convincing proof" that First American acted with "oppression, fraud and malice" as required under Kentucky law. Having dismissed those claims, the court held that the remaining claim of $5,000 was insufficient in amount to confer subject matter jurisdiction.

## II.

We turn first to the question whether the district court had subject matter jurisdiction to hear the claim for punitive damages and the further claim for incidental damages and attorney's fees. Since summary judgment was granted on the punitive damage claim, the district court apparently found it had jurisdiction to hear that claim. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2713 (1983) ("If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action.").

The district court, however, held that it did not have jurisdiction to hear the claim for incidental damages and attorney's fees. It reasoned that, after granting summary judgment in favor of First American on the claims for compensatory and punitive damages, the remaining claim failed to satisfy the jurisdictional amount requirement of $10,000, which was the required amount in effect at the time the complaint was filed. 28 U.S.C. § 1332(a) (1982). To the extent that First American asserts that the district court did not have jurisdiction over the claims for punitive damages or incidental damages and attorney's fees, we disagree for the reasons set forth below.

■■■ In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). When determining whether the amount in controversy has been satisfied, we examine the complaint at the time it was filed. *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir.1976). Jurisdiction, once established, cannot be destroyed by a subsequent change in events. *Id.* For example, "even if part of the claim is dismissed on a motion for summary judgment, thereby reducing plaintiff's claim below the requisite amount, the court retains jurisdiction to adjudicate the balance of the claim." 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3702 (1985). It is with these well-settled principles in

mind that we review the holdings of the district court.

■ First, we review the district court's jurisdictional holding as to the punitive damage claim. In Kentucky, punitive damages are governed solely by statute. Ky. Rev.Stat. § 411.184(5). The statute provides that "a plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." *Id.* at § 411.184(2). Klepper's complaint described the real estate transaction between Osborne and First American. He alleged that First American interfered with his contractual relationship with Osborne and conspired with Osborne to defraud him of partnership revenues. He further alleged that such conduct was "intentional, oppressive, fraudulent and malicious."

First American contends that our holding in *Sellers v. O'Connell,* 701 F.2d 575 (6th Cir.1983), requires that we not consider the punitive damage claim for jurisdictional purposes.

We decline to read our holding in *Sellers* as barring punitive damages in the computation of the jurisdictional amount. In *Sellers,* applying the law of the District of Columbia, we refused to include a claim for punitive damages in the calculation of the jurisdictional amount. *Sellers, supra,* at 579. Critical to our holding in *Sellers* was that the law of the District of Columbia did not favor punitive damages. *Id.* Indeed, the appellant in that case could find no authority supporting an award of punitive damages under those facts. *Sellers* stands for the general proposition that a court will find absence of jurisdictional amount to a legal certainty when state law bars recovery of the type of damages claimed. *Parmelee v. Ackerman,* 252 F.2d 721, 722 (6th Cir.1958) (mental distress damages not includable in computation of jurisdictional amount when barred by state law).

By contrast, Kentucky expressly provides for punitive damages by statute. Despite the clear and convincing standard and the absence of decided cases under the statute, we cannot say at the jurisdictional stage that appellant could not recover punitive damages to a legal certainty. *Bell v. Preferred Life Assur. Soc.,* 320 U.S. 238, 240–41 (1943); *Wood v. Stark Tri–County Building Trades Council,* 473 F.2d 272, 274 (6th Cir.1973). Klepper's allegations, if properly proved, could have justified an award of punitive damages. *Bell, supra,* 320 U.S. at 241. Appellant's complaint is sufficient on the issue of punitive damages to warrant the court's exercise of subject matter jurisdiction.

■ Second, we turn to the question whether the district court had subject matter jurisdiction to entertain the claim for incidental damages and attorney's fees. It is well established that claims can be aggregated to satisfy the jurisdictional amount requirement. *Lemmon v. Cedar Point, Inc.,* 406 F.2d 94, 96 (6th Cir.1969). Since the court had jurisdiction over the claims for compensatory and punitive damages at the time the complaint was filed, it also had jurisdiction over the otherwise deficient $5,000 claim for incidental damages and attorney's fees as well. *Id.* It is of no moment that summary judgment subsequently was granted in favor of defendant on the claims for compensatory and punitive damages. Once jurisdiction has properly attached, it cannot be ousted by subsequent events. *Worthams, supra,* 533 F.2d at 997. Accordingly, we hold that the district court erred in dismissing the claim for incidental damages and attorney's fees. We remand for a determination on the merits of the issues presented by that claim.

### III.

We turn next to the district court's award of summary judgment in favor of defendant on the compensatory and punitive damage claims.

■ On an appeal from a summary judgment, we review the record de novo to determine whether there are genuine issues of material fact. Fed.R.Civ.P. 56(c). We assess the record in the light most favorable to the non-movant, drawing all reasonable inferences in its favor. *Matsu-*

*shita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The non-movant, in order to prevail, however, must show sufficient evidence to create a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The showing of a mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Where clear and convincing evidence is required to prove a claim, the court must examine the evidence and determine whether a jury could find for the plaintiff under this more stringent standard. *Id.* at 255–56.

### (A)

■ With these standards in mind, we turn to the district court's summary judgment holding on the compensatory damage claim. Appellant contends, without citing relevant case law, that since his compensatory damage claim was not finalized on appeal from the district court's judgment confirming the arbitration award, it did not bar the same claim in the current action. This contention is contrary to Kentucky law.

In *Pierce v. Frito–Lay, Inc.,* 426 S.W.2d 439, 440 (Ky.1968), the court held that only satisfaction of an award against a joint tortfeasor could raise a bar precluding actions against other tortfeasors. While the arbitration award itself did not bar the commencement of the instant proceeding, it was clear that when the award subsequently was paid by Osborne, Klepper was effectively estopped from seeking a second recovery from First American. *Id.; Penco, Inc. v. Detrex Chem. Indus., Inc.,* 672 S.W.2d 948, 951–52 (Ky.App.1984).

We hold that the district court correctly granted summary judgment in favor of defendant on the compensatory damage claim.

### (B)

This brings us to the question whether appellant's claim for punitive damages was properly dismissed on the merits. Klepper contends that, contrary to the court's hold-ings, there was sufficient evidence to support a claim for punitive damages under Kentucky law. We disagree.

■ As stated above, the plaintiff must prove, by clear and convincing evidence, that the defendant acted with oppression, fraud or malice in order to recover punitive damages in Kentucky. Ky.Rev.Stat. § 411.184(2). The district court here found that Klepper failed to present sufficient evidence on the elements of oppression, fraud and malice to defeat First American's summary judgment motion. We address Klepper's allegations as to each element, evaluating each in light of the heightened standard of clear and convincing evidence as required by *Anderson.*

■ Malice is defined, in relevant part, in the Kentucky statute as "conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff...." Ky.Rev.Stat. § 411.184(1)(c). The district court refused to find malice based on Klepper's deposition testimony. When asked if he thought that First American directed malice or ill will toward him, Klepper responded: "I don't think they directed malice or ill will toward me...."

While we do not consider Klepper's subjective views on the presence or absence of malice as dispositive of that issue, we do agree with the ultimate holding of the district court on the malice issue. The sole evidence supporting Klepper's assertion of malice is the arbitration testimony of Richard Coriell, vice-president of First American. Coriell testified that the construction contract was proposed by the bank for two reasons. First, it was used as an "incentive" to complete the real estate transaction. Second, First American had a "valid need to complete some construction or renovation of the building". This scant evidence, even considered in the light most favorable to Klepper, could not overcome a motion for summary judgment. A reasonable jury could not find by clear and convincing evidence that defendant acted with malice. *Anderson, supra,* 477 U.S. at 255–56.

Klepper also claims that First American acted with oppression toward him. Oppression is defined in the Kentucky statute as "conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship." Ky.Rev.Stat. § 411.184(1)(a). The district court held that Klepper asserted no allegations of oppression. Klepper disputes this holding on several grounds.

Klepper points to his complaint which asserts in conclusory fashion that First American's actions were "oppressive, fraudulent and malicious". Klepper also points to the deposition where he testified, "I think their conduct was oppressive by way of its results to me." Klepper further points to Coriell's testimony which he asserts amounts to an admission that First American intended to subject him to cruel and unjust hardship. We decline to accept Klepper's conclusory allegations as sufficient to create a genuine issue of material fact under the more stringent, clear and convincing standard required for recovery of punitive damages in Kentucky. *Anderson, supra,* 477 U.S. at 255–56.

Finally, Klepper claims that First American's actions toward him were fraudulent. Fraud is defined in the statute as "an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff." Ky. Rev.Stat. § 411.184(1)(b).

Klepper relies principally on the sequence of negotiations for the sale of the property to support his contention of fraud. Coriell's testimony at the arbitration chronicled the negotiations. He testified that it was Osborne who first suggested that $3,500,000 be paid in cash and the remainder in some other form of consideration such as a consulting contract. First American made a counter offer suggesting that anything over $3,500,000 be guaranteed in the form of a construction contract. Ultimately, First American's suggestion became the basis of the agreement. Klepper surmises that this sequence of events and the mere fact that there was a separate construction agreement are sufficient to create a genuine issue of material fact.

Such evidence ordinarily might be sufficient to defeat a motion for summary judgment under a mere preponderance standard. Viewing the evidence in the light of the requirement of clear and convincing evidence, however, it is apparent that Klepper failed to present a genuine issue of material fact. *Anderson, supra,* at 255–56.

We hold that the district court correctly granted summary judgment in favor of defendant on the punitive damage claim.

### (C)

Klepper also contends that the district court abused its discretion in granting summary judgment before sufficient time was allowed for discovery. True, Klepper had no opportunity to engage in discovery because the court stayed all discovery pending resolution of First American's summary judgment motion.

Normally, Klepper might have prevailed in his challenge of summary judgment on this ground. Fed.R.Civ.P. 56(f), however, sets forth the method for opposing summary judgment based on insufficiency of discovery:

"Should it appear, from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Klepper had the burden of showing, by affidavit, why he was not able to oppose the motion for summary judgment. *Emmons v. McLaughlin,* 874 F.2d 351, 357 (6th Cir.1989). Klepper failed to meet his burden by not presenting any affidavit as required under Rule 56(f).

We hold that the district court did not abuse its discretion in granting summary judgment.

344

IV.

To summarize:

We reverse the judgment of the district court to the extent that it dismissed the claim for incidental damages and attorney's fees based on lack of subject matter jurisdiction. We hold that once jurisdiction attached at the time the complaint was filed, the court was not ousted of such jurisdiction by a subsequent change in events. We therefore remand the case with respect to that claim for a determination on the merits.

We affirm the judgment of the district court to the extent it granted summary judgment on the claims for compensatory and punitive damages.

Affirmed in part; reversed and remanded in part.